**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
_____X

**HANS B. VON NOLDE,**

           **Plaintiff,**                    **Case No.**

    **-against-**

                                    **COMPLAINT**

**AUSTIN COINS, INC.,**
**AUSTIN LLOYD, INC.,**
**NEW YORK FEDERAL GOLD, LLC,**
**PATRICK J. WHITE,**
**ERIC P. LESAK (ALIAS "MIKE TODD"),**
**TIMOTHY JAMES KING,**
**CHRISTIAN FOSTER,**
**CHARISMA PERRY,**
**P. WHITE HOLDINGS, LLC,**
**P WHITE INC.,**
**CASH MONEY BULLION CORP.,**
**JUST JOHN, LLC,**
**CNP13, INC. and**
**BULLION MUSCLE INC.,**

                   **Defendants.**
_____X

       Plaintiff, Hans B. von Nolde  ("Mr. von Nolde" or "Plaintiff") complaining of the

_Corporate Defendants_, Austin Coins, Inc. ("Austin Coins"), New York Federal Gold, LLC

("NYFG")[1], and Austin Lloyd, Inc. ("Austin Lloyd"), the _Individual Defendants_, Patrick J. White

("White"), Eric P. Lesak (alias "Mike Todd") ("Lesak"), and Timothy James King ("King"), the

_Conspiracy Defendant,_Christian Foster ("Foster"), and the _Aiding and Abetting Defendants_,

Charisma Perry ("Perry"), P. White Holdings, LLC ("PWH"), P White Inc. ("PWI"), Cash Money

Bullion Corp. ("CMBC"), Just John, LLC ("Just John"), CNP13, Inc. ("CNP13"), and Bullion

---

[1] Discovery may indicate that NYFG is a hybrid "_Corporate_" and "_Aiding and Abetting_" Defendant.

Muscle Inc. ("Bullion Muscle"), through the undersigned counsel files his Original Complaint and respectfully alleges:

## NATURE OF THE CASE

1.      Plaintiff brings this action pursuant to the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961-1968 (RICO) and New York law. This case involves a primary fraud scheme and a conspiracy to commit fraud by a group of Long Island precious metal coin dealers who conspired to and did, in fact, commit telemarketing fraud against Plaintiff and numerous other elderly citizens[2] through and under the auspices of the corporate defendants, Austin Coins, Inc., New York Federal Gold, LLC, and Austin Lloyd, Inc. (hereinafter the "Austin Lloyd Enterprise"), a RICO enterprise within the meaning of 18 U.S.C. §§ 1961(4) and 1962(b)-(d)).

2.      The Austin Lloyd Enterprise's scheme was conducted by the Individual Defendants and facilitated by the Conspiracy Defendant, Foster, and/or with the knowing assistance and support of the Aiding and Abetting Defendants through an "open-ended" pattern of racketeering activity of specific predicate acts, consisting specifically, in Mr. von Nolde's case, of running a classic "long con"[3] fraud via multiple telephone sales calls which culminated in them scamming Mr. von

---

[2] Coin fraud targeting the elderly has a long history in the Eastern District of New York. *See, e.g., United States v. Romano*, No. 09-CR-168 (SJ) (VMS), 2013 U.S. Dist. LEXIS 208446, at *19 n.5 (E.D.N.Y. 2013) and the testimony adduced at the criminal RICO coin fraud trial against Michael Romano and William Kearney:

> Patrick Coleman, Defendants' former employee, testified at trial that . . . Mr. Kearney's avowed sales tactics were to "crush weak people" and to "confuse the shit" out of "older people." . . . Daren Mutone, a former employee of Atlantic Coin Galleries, testified at trial that the Atlantic Coin Galleries salespeople would make fun of the victims because they were old and easier to convince. . . . Mr. Mutone testified that the elderly were "easier to push around," and that Mr. Romano and Mr. Kearney would hear the jokes and push the sales staff to sell even more coins to a victim who showed susceptibility to pressure and manipulation.

[3] The on-line Dictionary.com defines a "***long con***" as "an elaborate confidence game that develops in several stages over an extended period of time wherein the con man or swindler gains the victim's trust, often bypassing small profits with the goal of reaping a much larger payout in the final maneuver." *https://www.dictionary.com/browse/long-con* (accessed April 9, 2024); *see also* SMITH, EDWARD H. (1923). CONFESSIONS OF A CONFIDENCE MAN: A HANDBOOK FOR SUCKERS. Scientific

Nolde into purchasing 150 Anna Escobedo Cabral "Signature Series" "certified" modern silver bullion coins from Austin Coins (but making payment to NYFG for the coins) and then neither shipping the coins to Mr. von Nolde nor selling the coins on Mr. von Nolde's behalf. The result being that the members of the Austin Lloyd Enterprise simply stole Mr. von Nolde's money in return for nothing, all in furtherance of the Austin Lloyd Enterprise and to enrich themselves. In addition, or else in the alternative, Plaintiff alleges common law fraud and other torts and violations, resulting in significant damages to him.

3.      The *Individual Defendants* are principals (i.e. Defendant White) and officers/representatives/telemarketing agents of the Corporate Defendants, Austin Lloyd, Austin Coins, and/or NYFG (*i.e*, Defendants Lesak and King)) who scammed and defrauded Mr. von Nolde, and who, along with the *Conspiracy Defendant*, Foster,  are all  members of the enterprise, all of whom maintained an interest in and/or exerted control over the Austin Lloyd Enterprise within the meaning of 18 U.S.C. § 1962(b) and/or who working in combination to advance the Austin Lloyd Enterprise, and to enrich themselves, had a meeting of the minds, came to an agreement, and conducted and participated to further the Austin Lloyd Enterprise by conspiring within the meaning of 18 U.S.C. § 1962(d) to swindle, defraud, and rob Mr. von Nolde and numerous other elderly customers[4] of all or part of their life savings through telemarketing coin fraud scams.

4.      The *Aiding and Abetting Defendants*, including Defendants Perry, PWH, PWI, CMBC, Just John, CNP13, Inc., and Bullion Muscle, also conspired with the Individual Defendants and

---

American Publishing. pp. 35–37 (explaining stage 4 of the 6 stages of a classic confidence game--the "Pay-off or convincer").

[4] In this Complaint, whenever the term "customer(s)" appears, Plaintiff intends it to mean both "customer(s)" and "consumer(s)."

Conspiracy Defendant Foster to accomplish the Austin Lloyd Enterprise's fraud schemes against elderly customers of Austin Lloyd, Austin Coins, and NYFG, including Mr. von Nolde, and/or aided and abetted those fraud schemes with knowledge of said schemes and provided substantial assistance to advance the commission of the fraud schemes and to launder the enterprise's ill-gotten gains.

5.      Even were some or all of the Defendants determined not to have personally committed any predicate acts, each agreed to join and participate in the Austin Lloyd Enterprise with knowledge that the predicate acts of coin and precious metals fraud would be committed by some member(s) of the enterprise. Thus, each of the Defendants is liable for the torts of each of the other co-conspirators.

6.      **Plaintiff** Hans B. von Nolde, is an 81-year-old Canadian citizen who worked for many years as a banker in New York City and who, after retirement, continues to reside in Manhattan. Mr. von Nolde fell prey to the Individual Defendants' fraudulent scheme in furtherance of the Austin Lloyd Enterprise which has targeted numerous elderly telemarketing customers over a period of years, continuing to the present, and which is facilitated by and conducted through use of the U.S. mail and U.S. wires in violation of 18 U.S.C. §§ 1341, 1343 and which resulted in direct damages to Mr. von Nolde of at least One Hundred-Fifty Thousand Dollars ($150,000.00) as part of an open-ended,[5] systematic pattern of fraud targeting elderly customers, as well as breach

---

[5]   Unfortunately, Mr. von Nolde is far from the only elderly customer to complain of substantially similar coin fraud "investment" schemes by the Defendants in furtherance of the Austin Lloyd Enterprise. *See, e.g., Stephen E. Mauch v. Austin Lloyd, Inc., et al.*, Case No. 2:22-cv-04180 (E.D.N.Y.) filed July 16, 2022 (alleging similar fraud scheme and damages of $1.8 million to elderly corn farmer); *Jeffrey Miller v. Austin Lloyd, Inc., et al.*, Case No. 2:23-cv-06140 (E.D.N.Y.) (alleging similar fraud scheme and damages of $51,300.00 to elderly, retired dentist) filed August 15, 2023; *Allan R. Miller and Cheryl A. Miller v. v. Austin Lloyd, Inc., et al.*, Case No. 2:23-cv-06207 (E.D.N.Y.) (alleging similar fraud schemes and damages of $92,000,00 to an elderly couple) filed August 17, 2023; *Earl E. Keith v. Austin Lloyd, Inc., et al.*, Case No. 2:23-cv-09461 (E.D.N.Y.) (alleging similar fraud scheme and damages of over $244,000.00 to 82-year-old victim) filed December 22, 2023; *AnnaMarie F. Eakins v. Austin Lloyd, Inc., Austin Coins, Inc., et al.*,

of fiduciary duty, resulting from representations that they had sold Mr. von Nolde certain coins as "investments" and which they would hold in trust for him while they brokered sales of those coins; but which they instead either absconding with and converting such coins or else simply stole the purchase price of those coins.

7.      Mr. von Nolde seeks to recover of and from the Defendants, jointly and severally, actual damages, consequential damages, exemplary damages, treble damages under 18 U.S.C. § 1964, statutory damages under New York General Business Law § 349, pre- and post-judgment interest, attorneys' fees, litigation expenses and costs of suit.

## PARTIES, JURISDICTION AND VENUE

### *The Parties*

8.      Plaintiff, **Hans B. von Nolde** is a Canadian citizen and green-card holding lawful permanent resident of the State of New York.

9.      Defendant **Austin Lloyd, Inc.** ("Austin Lloyd") is a privately held corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County, New York and a physical business address at 48 S. Service Road, Melville, NY 11747. Austin Lloyd received monies—and facilitated the receipt of monies—by its principals and agents,

---

Case No. 2:24-cv-00206 (E.D.N.Y.) (alleging similar fraud schemes and damages of over $580,000.00 to 77-year-old widow and stroke victim); and *John H. Fikse v. Austin Lloyd, Inc. and Austin Coins, Inc., et al.*, Case No. 2:24-cv-00220 (E.D.N.Y.) (alleging similar fraud schemes and damages of $328,550.00 to 90-year-old victim); *David R. Grindle v. Austin Coins, Inc., et al.*, Case No. 2:24-cv-01125 (E.D.N.Y.) (alleging similar fraud schemes and damages of $80,000.00 to 72-year-old Wisconsin farmer); and *William Kevin Cleary v. Austin Lloyd, Inc., et al.*, Case No. 2:24-cv-01663 (E.D.N.Y.) (alleging similar fraud schemes and damages of $50,000.00 to 78-year-old victim). *See also Larry Dale Withers v. Austin Lloyd, Inc., et al.*; File No. 23-CVS-1024; In the General Court of Justice, Superior Court Division, Pender County, North Carolina (state court coin fraud case). Further, Plaintiff's counsel has just filed or is in the process of preparing complaints to file against these same Defendants on behalf of additional elderly telemarketing fraud victims, including Mary L. Morris (85-year-old retired Oregon school teacher), Dr. James Tanner (85-year-old widower from Kentucky), and Bernard Horn-Bostel (84-year-old retiree from Nevada). This demonstrates an unmistakable, ongoing, open-ended RICO pattern.

specifically, the Individual Defendants and Conspiracy Defendants, as well as the Aiding and Abetting Defendants, that were defrauded and stolen from Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise).[6]

10.     Defendant **Austin Coins, Inc.**[7] ("Austin Coins") is a privately held corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County, New York and a physical business address at 48 S. Service Road, Melville, NY 11747. Austin Lloyd received monies—and facilitated the receipt of monies—by its principals and agents, specifically, the Individual Defendants and Conspiracy Defendants, as well as the Aiding and Abetting Defendants, that were defrauded and stolen from Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise).

11.     Defendant **New York Federal Gold, LLC** ("NYFG") is a limited liability company organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, NYFG is a shell company and alter ego of its sole member and principal, Patrick J. White, who is a principal/officer of and controlled Austin Lloyd, Austin Coins, and NYFG, as well as the Austin Lloyd Enterprise. NYFG received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund NYFG's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to

---

[6]  Because Defendant Austin Lloyd, Inc. is the RICO enterprise, Plaintiff is not asserting claims against it as a RICO person. However, Plaintiff is asserting certain New York state law claims against Austin Lloyd, Inc. as detailed *infra*.

[7]  Austin Coins, Inc. is a sister entity to, or de facto successor-in-interest to Austin Lloyd, Inc. which was incorporated in New York on May 5, 2015. Both entities share the same office address and the same principals/officers. Austin Coins was incorporated in New York on June 9, 2020. Austin Coins also still actively markets itself and operates under the d/b/a "Austin Lloyd, Inc."

participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) by White and the other Defendants.

12.     Defendant **Patrick J. White** ("White") is a New York citizen and resident of Suffolk County, New York with a last known residential address at 3 Sweet Hollow Road, Huntington, NY 11743-6530 and a business address in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, White is a principal/officer of and controlled Austin Lloyd, Austin Coins, and NYFG who, together with the other defendants herein, participated in the conduct of the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities, and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) through a pattern of racketeering activity.

12.     Defendant **Eric P. Lesak** ("Lesak"), operating under the alias "Mike Todd,"[8] and known as "the Closer," is a New York citizen and resident of Nassau County, New York, with a last

---

[8]  It is hardly surprising that a twice-convicted recidivist securities fraudster such as Lesak would use an alias. *See https://www.sec.gov/files/litigation/complaints/2018/comp24239.pdf.* Use of a fictitious name makes it difficult, if not impossible, for victims of coin fraudsters' schemes to identify, sue, or serve the actual, specific perpetrator. Further, there is precedent for RICO coin fraud telemarketers to use aliases when interacting with customers. *See United States v. Romano,* No. 09-CR-168 (SJ) (VMS), 2013 U.S.

known residential address at 3494 Clifton Boulevard, Wantagh, NY 11793 and a business address

in Suffolk County at 48 S. Service Road, Melville, NY 11747; however, on information and belief,

"Erik Lesak" (BOP Register Number 31319-018) is presently incarcerated at the Lewisburg FCI,

2400 Robert F. Miller Drive, Lewisburg, PA 17837 having been convicted of securities fraud.

Lesak held himself out as an officer of Austin Lloyd and Austin Coins (and on information and

belief, NYFG), as well as a telemarketing sales agent, "Senior Account Advisor," and "investment

advisor" for the Corporate Defendants, who participated in the conduct of and controlled the affairs

of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to

enrich himself, to fund his own business activities (including those of Defendant Bullion Muscle

Inc. ("Bullion Muscle")) and to fund the business activities of the Austin Lloyd Enterprise with

money defrauded and stolen from Mr. von Nolde (as well as other elderly victims of the Austin

Lloyd Enterprise) through a pattern of racketeering activity.

**14.** Defendant **Timothy James King** ("King") is a New York citizen and believed to be a

resident of Suffolk County, New York, with a last known residence address of 813 Fort Salonga

Rd, C, Northport NY 11768. On information and belief, King is, or at all times pertinent was, a

telemarketing sales agent and "investment advisor" for the Corporate Defendants, Austin Lloyd

and Austin Coins, (and on information and belief, NYFG), who participated in the conduct of and

controlled the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants

herein, conspired to enrich himself, to fund his own business activities and to fund the business

activities of the Austin Lloyd Enterprise with money defrauded and stolen from Mr. von Nolde (as

---

Dist. LEXIS 208446, at *20 n.6 (E.D.N.Y. 2013) (in criminal RICO coin fraud trial, "Michelle Stumpf
testified . . . that the Defendants and their salespeople used false names when interacting with customers").

well as other elderly victims of the Austin Lloyd Enterprise) through a pattern of racketeering activity.

15.     Defendant **Christian Foster** ("Foster") is a New York citizen and believed to be a resident of Suffolk County, New York, with a last known address of 10 Applewood Road, Saint James, New York 11780. On information and belief, Foster is or, at all times pertinent was, a telemarketing sales agent and "investment advisor" for the Corporate Defendants, who participated in the conduct of the affairs of the Austin Lloyd Enterprise, and who, together with the other defendants herein, conspired to enrich himself, to fund his own business activities, and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In the alternative, this Defendant was unjustly enriched with funds defrauded from Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) by White and the other Defendants.

16.     Defendant **Charisma Perry** ("Perry") is a New York citizen and resident of Suffolk County, New York with a last known residential address at 3 Sweet Hollow Road, Huntington, NY 11743. On information and belief, Perry is White's girlfriend or "domestic partner," and she conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else she knowingly aided and abetted the fraud committed against Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In

addition, or else in the alternative, Perry was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, Perry was unjustly enriched with funds defrauded from Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) by White and the other Defendants.

17.     Defendant **P. White Holdings, LLC** ("PWH") is a limited liability company organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, PWH is a shell company and alter ego of its sole principal, Patrick J. White, who is a principal/officer of and controlled Austin Lloyd, Austin Coins, and NYFG, as well as the Austin Lloyd Enterprise. PWH received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund PWH's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's racketeering schemes by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) by White and the other Defendants.

18.     Defendant **P White Inc.** ("PWI") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road,

10

Melville, NY 11747. On information and belief, PWI is a shell company and alter ego of its sole and managing member, Patrick J. White, who is a principal/officer of and controlled Austin Lloyd, Austin Coins, and NYFG, as well as the Austin Lloyd Enterprise. PWI received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund PWI's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) by White, and the other Defendants.

19.     Defendant **Cash Money Bullion Corp.** ("CMBC") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, CMBC is a shell company and alter ego of its sole principal, Patrick J. White, who is a principal/officer of and controlled Austin Lloyd, Austin Coins, and NYFG, as well as the Austin Lloyd Enterprise. CMBC received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund CMBC's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's

fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) by White, and the other Defendants.

20.    Defendant **Just John, LLC** ("Just John") is a limited liability company organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, Just John is a shell company and alter ego of its sole member and principal, Patrick J. White, who is a principal/officer of and controlled Austin Lloyd, Austin Coins, and NYFG, as well as the Austin Lloyd Enterprise. Just John received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund Just John's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from

Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) by White and the other Defendants.

21.     Defendant **CNP13, Inc.** ("CNP13") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 48 S. Service Road, Melville, NY 11747. On information and belief, CNP13 is a shell company and alter ego of its principals, Charisma Perry and/or Patrick J. White, who is a principal/officer of and controlled Austin Lloyd, Austin Coins, and NYFG, as well as the Austin Lloyd Enterprise. CNP13 received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds were used to fund CNP13's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded from Mr. von Nolde, and others, and/or conspired to participate in the Austin Lloyd  Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Mr. von Nolde, and others, by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) by White, and the other Defendants.

22.     Defendant **Bullion Muscle Inc.** ("Bullion Muscle") is a corporation organized under the laws of the State of New York with its principal place of business located in Suffolk County at 3494 Clifton Boulevard, Wantagh, NY 11793. On information and belief, Bullion Muscle is a shell company and alter ego of its sole principal, Erik P. Lesak (a/k/a "Mike Todd"), who is, or held himself out to be, an officer of Austin Lloyd and Austin Coins. Bullion Muscle received and was enriched by funds generated by the business activities of the Austin Lloyd Enterprise which funds

were used to fund Bullion Muscle's own business activities and to fund the business activities of the Austin Lloyd Enterprise with money defrauded and stolen from Mr. von Nolde, and others, and/or conspired to participate in the Austin Lloyd Enterprise's fraudulent affairs by agreement with White and the other defendants herein, or else knowingly aided and abetted the fraud committed against Mr. von Nolde, and others, by the members of the Austin Lloyd Enterprise, through a pattern of racketeering activity. In addition, or else in the alternative, this Defendant was a knowing and active participant in the laundering of the Austin Lloyd Enterprise's ill-gotten gains. In the alternative, this Defendant was unjustly enriched with funds defrauded from Mr. von Nolde (as well as other elderly victims of the Austin Lloyd Enterprise) by White and the other Defendants.

### *Jurisdiction and Venue*

**23.**  This Court has federal question jurisdiction over this case pursuant to 18 U.S.C. §1964(c), RICO's civil damages provision. In addition, the Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because, and insofar as, they are so related to the federal claims that they form part of the same case or controversy and arise from the same nucleus of operative facts.

**24.**  This Court has *in personam* jurisdiction over all Defendants because at all relevant times Defendants conducted their business and fraudulent activities from their offices in this District. Further, all Defendants resided, maintained citizenship, were found, had agents, and are amenable to service in this District.

**25.**  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## INTRODUCTION TO THE COIN *FRAUD* INDUSTRY
## AND THE AUSTIN LLOYD RACKETEERING ENTERPRISE

### A.   Primer: the Coin *Fraud* Industry

**26.**   While no one disputes that there are upstanding, reputable precious metals dealers, a criminal subset (the "coin *fraud* industry") operating in the penumbra of those reputable dealers has been a longstanding problem. In late 1983 and early 1984, federal and state authorities initiated a long-awaited crackdown on precious metals dealers operating fraudulent "boiler room" schemes across the country. These precious metals fraudsters and racketeers had bilked investors out of several hundred million dollars.[9] Banking on customers' lack of knowledge, and using the nuances of coin collecting, grading, historical factors, and mint populations, unethical coin dealers continue to confuse and confound the average consumer with lies and deceptive claims of significant investment returns and bargains, often rising to the level of, and culminating in, outright fraud and counterfeiting. The United States Senate and various Federal and State agencies and commissions have investigated, and continue to investigate, the criminal underbelly of the precious metals industry.

### B.   The Coin Fraudsters Prey Upon the Elderly.

**27.**   A decade ago, a United States Senate Special Committee on Aging conservatively estimated that more than "*10,000 Americans have been victimized through these schemes, with losses around $300 million.*"[10] The U.S. Senate Report further revealed that the "*overwhelming number of victims*

---

[9]   *See Commodity Investment Fraud II, Hearings Before the Permanent Subcommittee on Investigations of the Senate Committee on Governmental Affairs,* 98th Cong., 2d Sess. 145-88 (1984)*; see also War on Florida Boiler Rooms,* N.Y. Times, Nov. 14, 1983; *Regulating Bullion Dealers,* N.Y. Times, Oct. 31, 1983; *Senate to Study Gold Dealers,* N.Y. Times, Oct. 27, 1983; *Bullion Fraud: Who Protects the Investor?,* Chicago Tribune, Oct. 25, 1983.

[10]   *See  Exploring the Perils of the Precious Metals Market*, U.S. Senate Special Committee on Aging, *https://www.aging.senate.gov/download/precious-metals-market-committee-staff-investigation*, at 17 (hereinafter "US Senate Report"*).

*in precious metal fraud are seniors*."[11] Likewise, the FBI has found that corrupt coin dealers intentionally target the elderly specifically "*because they [are] elderly and [the dealers] thought [they] could get away with it*" and that, while the amounts defrauded as to any individual elderly customer may seem small in comparison to certain other more high profile financial frauds, "*it represents a great deal to the victims – it was one man's life savings.*"[12] In fact, most of the fraud advisories and enforcement actions by the Federal and State agencies focus on the financial exploitation of the elderly at the hands of fraudulent coin dealers.[13]

**28.** More recently, the New York Attorney General published a consumer alert specifically warning against "**Coin Swindles**" in which she warns that: "*[s]o called 'rare coins' are often sold to unwary investors who are led to believe that they are a good investment that will increase in value over the years. Representations made about the expected increase in the value of these coins are almost always untrue and part of a scam perpetrated against unsophisticated, often elderly victims.*"[14] In fact, most of the fraud advisories and enforcement actions by Federal and State agencies focus on the financial exploitation of the elderly at the hands of fraudulent coin dealers.[15]

---

[11] *See* US Senate Report at 16.

[12] *See Fraudster Targeted Elderly Victims*" *https://www.fbi.gov/news/stories/the-case-of-the-corrupt-coin-dealer.*

[13] *See, e.g., https://dfpi.ca.gov/2022/02/01/dfpi-sues-to-stop-68-million-precious-metals-and-coin-fraud-targeting-elderly/.*

[14] *See https://ag.ny.gov/common-investment-scams.* Other state attorneys general have also issued precious metals fraud consumer alerts. *See, e.g., https://www.texasattorneygeneral.gov/consumer-protection/investing-gold-coins* (Texas), *https://www.ag.state.mn.us/consumer/publications/-CoinDealers.asp* (Minnesota), and *https://www.myfloridalegal.com/consumer-protection/how-to-protect-yourself-rare-coin-investment-schemes* (Florida).

[15] *See, e.g., https://dfpi.ca.gov/2022/02/01/dfpi-sues-to-stop-68-million-precious-metals-and-coin-fraud-targeting-elderly/.*

### C.  The Austin Lloyd Enterprise

**29.**  The person at the apex of the Austin Lloyd Enterprise and the mastermind of its scheme targeting elderly precious metals telemarketing customers is the principal of Austin Lloyd, Austin Coins, and NYFG, Patrick J. White ("White"). On information and belief, White is a former securities broker who has been permanently barred from working in the securities industry by FINRA,[16] as has his number one telemarketing sales agent, "Senior Account Advisor," "investment" advisor, and rogue securities broker, Eric P. Lesak (alias "Mike Todd") ("Lesak") who is also a member, and the maleficent driving force, of the Austin Lloyd Enterprise.

**30.**  White and the Austin Lloyd/Austin Coins/NYFG telemarketing minions (Lesak and King), as well as the Conspiracy Defendant, Foster, all of whom had a meeting of the minds to scam, defraud, and launder money illegally obtained from elderly customers, with the knowing support of the Aiding and Abetting Defendants (including Perry, CNP13, Bullion Muscle, and all of White's various shell companies[17]), controlled, participated in, and/or advanced the criminal operations of the Austin Lloyd Enterprise and cultivated the Austin Lloyd Enterprise into the textbook example of the most egregious serial abusers of elderly coin telemarketing customers in the entire coin fraud industry to date.

### FACTS COMMON TO ALL OF MR. VON NOLDE'S CLAIMS

**31.**  Plaintiff Hans B. von Nolde is an 81-year-old retired New York City banker who had the misfortune to cross paths with the members of the Austin Lloyd Enterprise and get snared in a "long con" "Signature Series" coin purchase/*faux* coin resale scam engineered by Lesak and King,

---

[16]  "FINRA" is the Financial Industry Regulatory Authority, a private American corporation that acts as a self-regulatory organization for its member brokerage firms and exchange markets. *https://www.finra.org/#/.*

[17]  Specifically, PWH, PWI, CMBC, and Just John.

by way of which they absconded with at least $150,000.00 of Mr. von Nolde's funds, as described in detail below.

**32.** On information and belief, Patrick J. White ("White"), the principal of the Corporate Defendants, Austin Coins, Austin Lloyd, and NYFG, and the mastermind and ringleader of the Austin Lloyd Enterprise, who never had direct dealings with Mr. von Nolde. It was White's minions, Eric P. Lesak ("Lesak") (under the alias "Mike Todd") and Timothy James King ("King") who had most, if not all, of the personal telephonic interactions with Mr. von Nolde.

**33.** At all times pertinent, Lesak was a telemarketing representative and "Senior Account Advisor" for Austin Lloyd and Austin Coins. Lesak also is known to have held himself out to different customers as an "owner," "Senior Investment Advisor," and "Executive Director of Purchasing, and Senior Partner" for Austin Lloyd and Austin Coins.[18] King, working under and in tandem with Lesak, was the Austin Lloyd Enterprise's "point man" with Mr. von Nolde.

**34.** In December 2023, Mr. von Nolde was cold-called by James King who stated that he worked for and was a "junior partner" in Austin Coins, Inc. At the time, King called him, Mr. von Nolde already had a modest collection of collectible coins, including some gold Canadian coins gifted to him by his parents and some that he had had purchased.

**35.** On that first call, King played his standard opening gambit, offering to sell Mr. von Nolde "uncirculated Morgan silver dollar" coins[19] as investments. Mr. von Nolde agreed to purchase

---

[18] On information and belief, all Austin Lloyd/Austin Coins telemarketers utilize standardized sales "scripts" composed and developed by White and Lesak to lure and convince their customers to purchase overpriced coins and/or to ship their coins to Austin Lloyd/Austin Coins in New York for "appraisal" (or even more cynically, as in this case, convince the buyer to let them retain possession of the purchased coins in trust for brokered resale) where the coins are then converted and resold to other unsuspecting elderly customers—"lather, rinse, repeat."

[19] Morgan silver dollar coins are a common numismatic (as opposed to bullion) coin minted by the United States between 1878 and 1921.

twenty (20) of the coins for a total price of $1,500.00. He paid Austin Coins for the purchase with his American Express credit card. Within a few days, the coins were delivered to Mr. von Nolde via Federal Express (FedEx). Upon examination, Mr. von Nolde decided that they were not what he expected because they did not appear to be as King had represented. Mr. von Nolde returned the coins to Austin Coins via the same FedEx box with a return label provided by King. However, rather than requesting a refund, Mr. von Nolde instead left the $1,500.00 on account with Austin Coins, expecting that he would consummate another transaction with the company.

36.     A few days later, King called Mr. von Nolde again, and this time he discussed with (and pitched to) Mr. von Nolde John Mercanti "Signature Series" certified silver bullion coins as an "investment."[20] The Mercanti "Signature Series" silver bullion coins are encased in a plastic holder (a "slab"), along with a certification card bearing John Mercanti's signature and other information. King promoted the Mercanti coins as good "investments," explaining that the coins are sold and traded as "collectibles." Falling for King's spiel, Mr. von Nolde agreed to purchase three (3) 1995 "Flag Series" Mercanti "Signature Series" silver bullion coins for a total purchase price of $8,500.00, adding an additional $7,000.00 to the $1,500.00 already on account with Austin Coins by again charging his American Express credit card.

37.    However, Mr. von Nolde's receipt of the Mercanti coins was repeatedly delayed, with Austin Coins providing various excuses. His patience wearing thin, on January 10, 2024, Mr. von Nolde sent King an email (jamesking@austincoinsinc.com) demanding either immediate delivery of the purchased coins or else cancellation of the deal and return of his funds. Shortly thereafter, Mr. von Nolde received the coins via FedEx. Mr. von Nolde is still in possession of the three (3) Mercanti

---

[20] John M. Mercanti served as the 12th Chief Engraver of the United States Mint, designing many coins in various denominations before his retirement in 2010.

silver bullion coins.

**38.**     Subsequently, in approximately mid-February 2024, King again called Mr. von Nolde. This time King promoted a different type of "Signature Series" certified bullion coin as an investment—Anna Cabral certified silver bullion coins. Like the Mercanti bullion coins, the Anna Cabral bullion coins are slabbed, "certified," and signed by a coinage/monetary luminary—in this instance by Anna Escobedo Cabral, who served as Treasurer of the United States from 2005 to 2009. King represented to Mr. von Nolde that 2016 Anna Cabral "Signature Series" bullion coins which had sold for $3,000.00 a piece just one year previously, were then worth $4,000.00 a piece—a 33% return per annum. King then told Mr. von Nolde that 2017 Anna Cabral "Signature Series" bullion coins were worth $3,000.00 a piece but that Austin Coins could sell those coins to Mr. von Nolde at a significant discount. Ultimately, King convinced Mr. von Nolde to purchase twenty-five (25) "Anna Cabral 2017(P) Silver Eagle MS 70" "Signature Series" certified bullion coins from Austin Coins as an investment for a total price of $30,000.00 (or just $1,200.00 per coin). Mr. von Nolde paid for these twenty-five (25) Anna Cabral bullion coins via charge to his American Express credit card. Mr. von Nolde chose to have the coins remain with Austin Coins, in hopes that they could be "flipped" to another buyer at a higher price.

**39.**     Following the second purchase, King continued to telephone Mr. von Nolde every few days, pitching the idea of a much larger purchase of coins. Mr. von Nolde told King that he would not even consider purchasing any more coins from Austin Coins unless he could obtain a return of a substantial part of his then investment of $38,500.00. King agreed, and soon afterwards he represented to Mr. von Nolde that he had been able to sell ten (10) of Mr. von Nolde's twenty-five (25) Anna Cabral bullion coins (which never had even been in his possession) for $3,000.00 a piece (which would represent a 150% return on his $1,200.00 investment on each of those ten (10)

20

coins in less than one month), or exactly the $30,000.00 Mr. von Nolde had invested.

**40.**  While the vast majority of Mr. von Nolde's interactions and communications with Austin Coins representatives were with King, on two or three occasions, King had Lesak (alias "Mike Todd") join on the telemarketing calls with Mr. von Nolde. Mr. von Nolde is unable to specifically recall the exact dates of each of the calls in which Lesak participated; however, Mr. von Nolde does specifically recall that Lesak was "very aggressive" towards him and tried to bully him to buy coins.

**41.**  Shortly thereafter, in late February 2024, King again called Mr. von Nolde to pitch him a more significant investment in Anna Cabral "Signature Series" certified bullion coins. On this occasion, Mr. von Nolde recalls that Lesak joined with King on the call. In his usual hyperaggressive manner, Lesak told Mr. von Nolde that he was "an idiot" if he could not understand that they were offering to sell him coins valued at $3,000/coin "based on the NGC price guide" for just $1,000/coin. Despite (or more likely because of) Lesak's bullying, Mr. von Nolde, based on the representations by King and Lesak that the coins were solid, high return investment vehicles that he was buying at a huge discount below market price, agreed to purchase another 150 Anna Cabral "Signature Series" certified bullion coins for a total purchase price of $150,000.00 (that is, a per unit price of $1,000.00). Following their agreement, Mr. von Nolde received an invoice dated March 4, 2024 from "Austin Coins Inc.," describing the purchased coins as "2017 P Anna Cabral Signed American Silver Eagle NGC MS70." The next line under the description of the coins reads: "**Total Price Guide Value: $450,000.00**." Despite the transaction being with, and the invoice coming from, Austin Coins, the invoice demanded payment by check in the amount of $150,000.00 made payable to "New York Federal Gold LLC."

42.     Mr. von Nolde delayed sending payment for the 150 coins until he received the $30,000.00 check. On or about March 11, 2024, appearing to confirm King's representations as to the investment potential of Anna Cabral "Signature Series" certified bullion coins, Mr. von Nolde received a check in the amount of $30,000.00 drawn on an account at the American Community Bank, in Commack, Long Island, with the account name of Austin Coins Inc. A few days later, Mr. von Nolde also received, via FedEx, fifteen (15) Anna Cabral "Signature Series" certified bullion coins, supposedly the "remaining" coins he had purchased in mid-February 2024.

43.     The same day he received the $30,000.00 check, Mr. von Nolde made payment on the Austin Coins invoice via a Charles Schwab, Schwab One, check drawn on The Bank of New York Mellon, delivered to "Austin Coins, Inc." On information and belief, and based on information provided by Schwab, Mr. von Nolde's check was deposited into an account at JPMorgan Chase Bank.

44.     Although the funds were deposited by NYFG, Mr. von Nolde never received shipment of the 150 Anna Cabral "Signature Series" certified bullion coins he purchased from Austin Coins. Rather, based on Lesak's and King's representations that he had purchased the coins as an "investment" for a price 2/3 *below* market value, they offered to retain the coins in Austin Coins' vault which would facilitate selling the coins on behalf of Mr. von Nolde and forwarded him an Authorization form which would allow Austin Coins to retain and hold Mr. von Nolde's 150 Anna Cabral coins in its vault. Mr. von Nolde never executed and returned the Authorization to Austin Coins. Nor did Austin Coins ever ship the coins to Mr. von Nolde.

45.     Throughout April and May 2024, Mr. von Nolde and King had several telephone conversations addressing whether Austin Coins could sell some of Mr. von Nolde's coins which he presumed they were still holding in trust in the Austin Coins vault for him.  On several occasions

during this period, King deflected Mr. von Nolde's inquiries by telling him that he had not been able to sell any of the coins.

**46.** On approximately June 25, 2024, Mr. von Nolde was able to reach King via telephone and learned that a new "administrator," Sarah Lord, would help him with his account. Subsequently, on June 27, 2024, Mr. von Nolde received a call from Sarah Lord, and after speaking with her, he sent her an email that same day voicing his concerns and questions regarding the Austin Coins' vault storage Authorization and his coins. Specifically, Mr. von Nolde asked Sarah Lord three questions in the email:

1. Will someone at Austin Coins acknowledge the agreement?
2. Is there an inventory list available? As you are aware, each slab (150) has its own unique NGC certification number [and]
3. In the future, should I want to retrieve the coins, are there major procedures that I should be aware of?

Neither Sarah Lord nor anyone else with Austin Coins responded to Mr. von Nolde's questions. Mr. von Nolde followed up several times but received no calls or emails from Austin Coins addressing his concerns.

**47.** Thus, as of early July 2024, all communications with Austin Coins ceased. Mr. von Nolde continued his attempts to follow up by telephone multiple times and also faxed and FedExed a letter to Austin Coins' principal, White, demanding assurances, but still he received no response.

**48.** On August 6, 2024, Mr. von Nolde's attorney FedExed and faxed a letter to Austin Coins at (631) 239-6881 to the attention of Defendants White and Lesak stating that the facts suggested either that Austin Coins' and King's and Lesak's dealings with Mr. von Nolde either were a fraudulent con scheme from the outset or else the coins at issue existed but had been converted by Austin Coins. Again, this provoked no response from White, Lesak, or the other Defendants.

49.  The Defendants' refusal either to refund Mr. von Nolde's money or else ship him the 150 Anna Cabral "Signature Series" certified bullion coins he bought and for which he paid $150,000.00, but which Austin Coins never shipped to him, has left him no recourse but to file this lawsuit.

50.  The principal of Austin Coins, Austin Lloyd, and NYFG, the mastermind and ringleader of the Austin Lloyd Enterprise, White, and the telemarketing agents (King and Lesak) of Austin Coins, each of whom is a member of the Austin Lloyd Enterprise, along with the other Austin Lloyd/Austin Coins agents, representatives, co-conspirators, and aiders and abettors,  Foster, Perry (and White's and Lesak's shell companies) had a meeting of the minds and conspired with one another to run a confidence scheme on numerous elderly telemarketing customers, including specifically Mr. von Nolde: (1) to purchase 150 Anna Cabral "Signature Series" certified bullion coins  from Austin Coins for $150,000.00 (2) which coins either Austin Coins never possessed in the first place or else (3) which coins the Defendants failed to ship to Mr. von Nolde but rather Defendants simply stole Mr. von Nolde's $150,000.00 purchase price and converted same for their own enrichment and in furtherance of the Austin Lloyd Enterprise.

51.  The ultimate goal of the Defendants, and the primary, if not entire, business model of the Austin Lloyd Enterprise, is to defraud, bilk, and impoverish elderly customers, including Mr. von Nolde, and by so doing to enrich themselves. As a direct and/or proximate result of the Defendants' above-described wrongful acts and practices, Mr. von Nolde has suffered (and continues to suffer) significant economic damages, which Defendants refuse to remedy.

### FACTS SPECIFIC TO THE AIDING AND ABETTING DEFENDANTS

52.  In 2023, dueling lawsuits involving principals of Austin Lloyd brought to light the identities of additional persons and entities that knowingly agreed to aid and abet the fraud schemes of the

members of the Austin Lloyd Enterprise.[21]

**53.** Before becoming the principal owner and mastermind of Austin Lloyd and Austin Coins, White was a principal/half owner in another "rare coin" business ("New York Rarities Limited Liability Company" which White organized on August 19, 2016) with partners Thomas Laviano and Jillian Laviano providing the capital for the business. According to the lawsuit of *New York Rarities Limited Liability Company, Thomas Laviano and Jullian Laviano v. Patrick White, Charisma Perry, et al.*, Index No. 607542/2017 (Supreme Court, Nassau County), the Lavianos discovered that White and Perry were running the same types of coin fraud scams through New York Rarities that Plaintiff suffered in this suit.

**54.** When White and the Lavianos had a "falling out" (i.e., when White got caught, and the Lavianos filed suit), White approached family friend Jenson Adoni in 2017 about partnering with him in the coin business. White and Jenson Adoni ("Adoni") used an existing New York corporation that Adoni's father previously had formed "Austin Lloyd, Inc." White began telemarketing operations as "Austin Lloyd, Inc." and assembled a sales staff, many of which, like White, were barred, suspended, or disciplined by FINRA and/or the SEC for illegal or unethical sales practices. The sales and operations staff included Lesak and Sean Klein.[22]

**55.** In or around 2022, Adoni discovered multiple "red flags" in White's operation of Austin Lloyd and attempted to reign in White and his rogue coin telemarketing sales team, particularly Lesak and Sean Klein. By January 2023, White made overtures to "buy-out" Adoni's interest in

---

[21] The referenced lawsuits are: (1) *Patrick White and Austin Lloyd, Inc. v. Jensen Adoni, et al.*; Index No. 60476/2023; In the New York Supreme Court, Suffolk County and (2) *Jensen Adoni, individually and derivatively on behalf of Austin Lloyd, Inc. v. Austin Coins, Inc., et al.*; Index No 621767/2023; In the New York Supreme Court, Suffolk County.

[22] On page 17, paragraph 129 of the complaint in *Adoni v. Austin Coins, et al.*, Adoni contends that "White made [Austin Lloyd, Inc.] a haven for disgraced brokers because they could employ sales tactics which were utilized to sell stocks in an industry that was generally unrelated."

Austin Lloyd. Adoni contended that Austin Lloyd had sales in excess of $29,000,000 in 2022 alone, with profits of more than $12,000.000.

56.  In February 2023, Adoni discovered that White had organized a separate New York corporation, Austin Coins, Inc. ("Austin Coins") and contends that White had been making sales from Austin Lloyd's coin inventory but funneling the proceeds of those sales into Austin Coins.

57.  White ran Austin Lloyd and Austin Coins as a single entity and failed to observe corporate formalities. In fact, Austin Coins continues to do business as "Austin Lloyd, Inc." White has now shifted his coin fraud operations to a third entity, NYFG. For all practical purposes, Austin Lloyd,Austin Coins, and now NYFG are run as one and the same, and their funds and finances are commingled.

58.  Austin Lloyd's Chase bank account records for <u>January 2022 through February 2023</u> document the following transactions involving certain of the Individual Defendants and Aiding and Abetting Defendants in this case:

- **$821,732.65** in transfers from Austin Lloyd to Charisma Perry ("Perry"), White's *inamorata*[23]

- **$1,805,220.52** in transfers from Austin Lloyd directly to White, to PWH, to PWI or to White's American Express credit card

- **$1,422,154.54** in cash withdrawals (by White)

- **$1,745,000** in transfers from Austin Lloyd to Lesak's company, Bullion Muscle

- **$620,000** via six (6) payments from Austin Lloyd to Sean Klein (via wire transfers) and

59.  Adoni's complaint further asserts that Austin Lloyd and White made payments and transfers to Perry and to White's other companies, NYFG (before it cycled into its current primary role),

---

[23] In a Request for Information [Dkt. No. 112] filed in the *White v. Adoni, et al.* case (Index No. 60476/2023), it appears that between January 2022 and December 2022—one calendar year—Perry actually received **over $3 million** from Austin Lloyd.

CMBC, and Just John, and to CNP13 (owned by White and/or Perry), thereby converting and attempting to launder monies that White and the Austin Lloyd Enterprise had defrauded and stolen from telemarketing customers, such as Mr. von Nolde.

## CLAIMS FOR RELIEF/CAUSES OF ACTION

### COUNT I

**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) AGAINST ALL DEFENDANTS FOR CONSPIRACY TO PARTICIPATE IN AND COMMIT A PATTERN OF MAIL AND WIRE FRAUDS AND MONEY LAUNDERING**

60. Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

61. At all relevant times, Plaintiff was a "person" within the meaning of 18 U.S.C. § 1964(c).

62. At all relevant times, Austin Lloyd, Inc. was an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

63. At all relevant times, Individual Defendant White was a "person" within the meaning of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d).

64. At all relevant times, Corporate Defendant Austin Coins, Inc. was a "person" within the meaning of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d).

65. At all relevant times, Corporate Defendant New York Federal Gold, LLC was a "person" within the meaning of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d).

66. At all relevant times, each of the other Individual Defendants, Lesak (aka "Mike Todd") and King, and and Conspiracy Defendant, Foster, was a "person" within the meanings of 18 U.S.C. §§ 1961(3), 1962(c), and 1962(d) and, to the extent that each "acquire[d] or maintain[ed], directly or indirectly, any interest in or control of" the Austin Lloyd Enterprise, 1962(b).

68. The Individual Defendants, Austin Coins, and NYFG, as members of the Austin Lloyd

Enterprise had a meeting of the minds and agreed to commit a series of mail and wire frauds, as well as money laundering, constituting a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) against Mr. von Nolde, and numerous other elderly citizens, as detailed *supra*, in violation of 18 U.S.C. § 1962(d). The particular predicate acts of the conspiracy against multiple elderly telemarketing customers, including Mr. von Nolde, began no later than 2020[24] and continue through the present. The Individual Defendants, White and Lesak (aka "Mike Todd"), and Corporate Defendants, Austin Coins and NYFG, each participate in the Austin Lloyd Enterprise by taking at least some part in controlling and directing the affairs of said enterprise, and the Individual Defendants, Lesak (aka "Mike Todd") and King, who directly interacted with Plaintiff as telemarketing sales agents or representatives of Austin Coins and/or NYFG, and as persons associated with the Austin Lloyd Enterprise, agreed to facilitate and commit the individual predicate acts of fraud and money laundering as part of the fraudulent scheme targeting numerous elderly customers, and Mr. von Nolde in particular, in furtherance of the Austin Lloyd Enterprise and to enrich themselves.

**69.**  This conspiracy violated 18 U.S.C. § 1962(c) in that it consisted of a pattern of racketeering activity, specifically multiple instances of mail fraud (in violation of 18 U.S.C. § 1341), wire fraud (in violation of 18 U.S.C. § 1343), and money laundering (in violation of 18 U.S.C. § 1956(a)(1)). White, as principal, and, on information and belief, Lesak, King,  and Foster,  as officers and/or representatives of the Austin Lloyd Enterprise, knew that the telemarketing sales practices and tactics were misleading and unlawful and would cause their elderly customers, including Plaintiff,

---

[24] One of the victims whose case is referenced in **footnote 5**, *supra*, Stephen E. Mauch, alleged in his Complaint that he was first contacted by these same telemarketing defendants in early 2021. Another elderly victim, AnnaMarie F. Eakins, alleges that the scheme by these same telemarketing defendants to defraud her and steal her coin inventory began in mid-2021. Mr. von Nolde's first interactions with members of the Austin Lloyd Enterprise was in 2023. Nevertheless, it is clear that Defendants have been running a coin fraud telemarketing racket against elderly customers for over three (3) years.

to suffer damages that were reasonably foreseeable by them and/or anticipated as a substantial factor and a natural consequence of their pattern of unlawful activity.

70.   White, as principal, and, on information and belief, Lesak, King, and Foster, as officers and/or representatives, are members of the Austin Lloyd Enterprise and as co-conspirators are liable for all of the actions committed by all of the co-conspirators within the conspiracy and are liable for all of the damages sustained by Plaintiff that were caused by any of the members of the conspiracy, regardless of whether they were themselves directly involved in any *particular* aspect of the Austin Lloyd Enterprise.

71.   The pattern of unlawful activity conducted as individuals and in their representative capacities as principals and representatives of the Austin Lloyd Enterprise, by White, as principal, and, on information and belief, by Lesak, King, and Foster, as officers, and/or representatives, proximately and/or directly caused Plaintiff to suffer injury to his business and/or property within the meaning of 18 U.S.C. § 1964(c).

72.   At all relevant times, each of the Aiding and Abetting Defendants, Charisma Perry ("Perry"), P. White Holdings, LLC ("PWH"), P White Inc. ("PWI"), Cash Money Bullion Corp. ("CMBC"), Just John, LLC ("Just John"), CNP13, Inc. ("CNP13"), and Bullion Muscle Inc. ("Bullion Muscle"), was a "person" within the meanings of 18 U.S.C. §§ 1961(3), 1962(c), and 1962(d), and each of them agreed to join the Austin Lloyd Enterprise with knowledge that White and the Individual Defendant members of the enterprise (including Foster) would commit and were committing multiple predicate acts of mail and wire fraud and money laundering and that the exorbitant financial fruits of those predicate acts of fraud and money laundering were being transferred from and through the Austin Lloyd Enterprise to the Aiding and Abetting Defendants via multiple transfers in order to "launder" and hide those funds from Plaintiff and other elderly

victims of the Austin Lloyd Enterprise.

**73.**  As a direct and proximate result of the violations set forth above, Mr. von Nolde has been injured. The Individual Defendants', Conspiracy Defendants, and Aiding and Abetting Defendants' 18 U.S.C. § 1962(d) conspiracy to violate 18 U.S.C. § 1962(c) is the proximate cause of this injury. Pursuant to the provisions of 18 U.S.C. § 1964(c), Mr. von Nolde is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest and attorneys' fees.

## COUNT II

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) AGAINST THE *AIDING AND ABETTING DEFENDANTS* FOR AIDING AND ABETTING MONEY LAUNDERING

**74.**  Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**75.**  Plaintiff further incorporates by reference all factual statements and allegations set out in Count III, *infra*, and Count IV, *infra*, as if fully copied and set forth below at length.

**76.**  Each of the Aiding and Abetting Defendants, Charisma Perry ("Perry"), P. White Holdings, LLC ("PWH"), P White Inc. ("PWI"), , Cash Money Bullion Corp. ("CMBC"), Just John, LLC ("Just John"), CNP13, Inc. ("CNP13"), and Bullion Muscle Inc. ("Bullion Muscle"), had knowledge of the primary RICO frauds of mail fraud and wire fraud in violation of 18 U.S.C. §§ 1341, 1343 by the Individual Defendants, Lesak and King,  as well as White, in furtherance of the Austin Lloyd Enterprise and the primary RICO fraud of money laundering in violation of 18 U.S.C. § 1956(a)(1)).

**77.**     Each of the Aiding and Abetting Defendants, provided substantial assistance in the money laundering operation of the Individual Defendants in furtherance of the Austin Lloyd Enterprise by receiving, accepting, and retaining monies from the Austin Lloyd Enterprise with knowledge

that he/she/it was helping to launder and hide the financial fruits of the primary frauds perpetrated by the Individual Defendants against Mr. von Nolde and the numerous other elderly victims of the Austin Lloyd Enterprise.

**78.**     As a direct and proximate result of the violations set forth above, Mr. von Nolde has been injured. The Aiding and Abetting Defendants' 18 U.S.C. § 1962(d) conspiracy to violate 18 U.S.C. § § 1956(a)(1) is the proximate cause of this injury. Pursuant to the provisions of 18 U.S.C. § 1964(c), Mr. von Nolde is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest and attorneys' fees.

**COUNT III**

**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) AGAINST THE *INDIVIDUAL DEFENDANTS* FOR MAIL FRAUD AND WIRE FRAUD (18 U.S.C. §§ 1341, 1343)**

**79.**  Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**80.**  By the acts described herein, the Individual Defendants, particularly White, Lesak (aka "Mike Todd"), and King, and the Conspiracy Defendant, Foster, as members of the Austin Lloyd Enterprise, knowingly executed or intentionally participated in a scheme that defrauded, and was intended to defraud, Mr. von Nolde, and numerous other elderly citizens, and employed the use of the mails, as an integral part of said scheme and in furtherance thereof.

**81.**  Central to, and in furtherance of, that scheme, and as described above, the Individual Defendants, in their capacities of principal, telemarketing sales agents, and "account managers" and "investment" advisors, made misrepresentations over the telephone to Mr. von Nolde as part of the "long con" scheme to convince him to purchase from Austin Coins and pay NYFG for the 150 Anna Cabral "Signature Series" certified bullion coins and then simply stealing $150,000.00 from him via a bogus coin sale or else converting those coins he purchased for their own unlawful

gain. The Individual Defendants' use of the wires in perpetrating their schemes was not merely incidental to their fraud and misrepresentations but rather, given that the scheme was dependent upon telemarketing technology, and was instrumental to their scheme in that Mr. von Nolde was never able to see them in person, look them in the eye and gauge their sincerity and veracity, much less physically inspect the coins purchased (or *purportedly* purchased).[25]

**82.**  The means by which the Individual Defendants were able to con Mr. von Nolde into trusting them and paying them to purchase the 150 Anna Cabral "Signature Series" certified bullion coins in furtherance of the scheme and thereby defraud him of a portion of his life savings is the unholy combination of the obscure inner workings of the retail precious metals telemarketing industry and the soulless greed of the members of the Austin Lloyd Enterprise. That all interactions, communications, and sales transpired via wire (i.e. telephone) and mail was not coincidental or happenstance. Rather, telemarketing enabled and defined the scheme.

**83.**  As a direct and proximate result of the fraudulent theft of Mr. von Nolde's purchase price ($150,000.00) for the coins or else the conversion and theft of those coins, as set forth above, Mr. von Nolde has been injured. The Individual Defendants' multiple, repeated violations of 18 U.S.C. §§ 1341 and 1343 are the proximate cause of this injury. Pursuant to the provisions of 18 U.S.C. § 1964(c), Mr. von Nolde is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest, and attorneys' fees.

---

[25] Given that Mr. von Nolde never received shipment of the 150 Anna Cabral "Signature Series" certified bullion coins, the knowledge as to whether the entire transaction was a scam or whether the coins actually existed but were stolen and converted is particularly within the knowledge of the Defendants.

## COUNT IV

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) FOR MONEY LAUNDERING (18 U.S.C. § 1956(a)(1)) (AGAINST DEFENDANTS WHITE, PWH, PWI, NYFG, CMBC, JUST JOHN, PERRY, CNP31, LESAK, BULLION MUSCLE, KING, AND FOSTER)

**84.**    Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**85.**    Defendants White, and his shell companies, PWH, PWI, NYFG, CMBC, and Just John, Perry and CNP13, Lesak, and his shell company, Bullion Muscle, King, and Foster laundered monies defrauded from Mr. von Nolde and other elderly customers of Austin Lloyd, Austin Coins, and NYFG in violation of 18 U.S.C. § 1956(a)(1) and in furtherance of the Austin Lloyd Enterprise.

**86.**    There were numerous financial transactions authorized and conducted by White through the Austin Lloyd Enterprise which transactions involved proceeds of specified unlawful activity (specifically, mail fraud and wire fraud under 18 U.S.C. § 1961(1)) as defined in 18 U.S.C. § 1956(c)(7) and in which White, PWH, PWI, NYFG, CMBC, and Just John, Perry, CNP31, Lesak, Bullion Muscle, King, and Foster participated. Each of these Defendants had actual knowledge that the property involved in these financial transactions represented the proceeds of some form of unlawful activity. Each of these Defendants had actual knowledge that the transactions were designed in whole or in part to conceal or disguise the nature, the location, the source, the ownership, and/or the control of the proceeds of the specified unlawful activities. 18 U.S.C. § 1956(a)(1)(B)(i). In addition, or else in the alternative, each of these Defendants conducted or attempted to conduct the transactions with the intent to promote the carrying on of the specified unlawful activities. *Id.* at § 1956(a)(1)(A)(i).[26]

---

[26] *Leung v. Law*, 387 F. Supp. 2d 105, 118 (E.D.N.Y. 2005) (pleadings alleging money laundering are "not subject to the stringent particularity requirement of Rule 9(b)"); *Schlesinger v. Schlesinger*, No. 05-CV-5016-ADS-WDW, 2007 U.S. Dist. LEXIS 110930, at *37 (E.D.N.Y. 2007) (same).

87.   Defendants White, and his shell companies, PWH, PWI, NYFG, CMBC, and Just John, Perry and CNP13, Lesak, and his shell company, Bullion Muscle, King, and Foster laundered monies defrauded from Mr. von Nolde and other elderly customers of the Corporate Defendants in violation of 18 U.S.C. § 1956(a)(1). As a direct and proximate result of this violation, Mr. von Nolde has been injured. Pursuant to the provisions of 18 U.S.C. § 1964(c), Mr. von Nolde is entitled to bring this action and recover treble damages, the costs of bringing this suit, prejudgment interest and attorneys' fees.

## V.

### FRAUD AND/OR FRAUDULENT CONCEALMENT (AGAINST AUSTIN LLOYD, AUSTIN COINS, NYFG, AND *INDIVIDUAL DEFENDANTS*, WHITE, LESAK, AND KING)

88.   The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length, and, pleading in the alternative, alleges:

89.   Via a "long con" scam consisting of a series of oral misrepresentations and high-pressure sales tactics (as set out in detail above), White, as principal of Austin Lloyd, Austin Coins, and NYFG, and Lesak and King, as officers and/or telemarketing representatives of Austin Lloyd, Austin Coins, and NYFG, and holding themselves out as "investment advisors," precious metals experts, and "senior account advisors," conned Plaintiff into purchasing 150 Anna Cabral "Signature Series" certified bullion coins from Austin Coins and paying $150,000.00 to NYFG for those coins, which coins either never existed or were theirs to sell, or else after receiving Plaintiff's purchase money they simply absconded with and converted the coins at issue, thereby defrauding Plaintiff pursuant to New York common law.

90.    In addition, the Defendants are liable for fraudulent concealment against Mr. von Nolde. The elements of fraudulent concealment are identical to the elements for fraud with the addition that the defendant must have a duty to disclose material information and failed to do so.

91.    The Defendants, Austin Lloyd, Austin Coins, and NYFG, as well as their individual principal, White, and their telemarketing sales agents, Lesak and King, represented to Mr. von Nolde that they were "account advisors," precious metals experts, and "investment advisors," and thus each had a duty to disclose to that they were not qualified to offer "investment" advice regarding precious metal coins; rather, their intent from the outset was to convince him either to pay money for non-existent coins or else to pay for coins which they had no intention of ever shipping to him, but rather which they intended from the outset to convert and steal to enrich themselves. Defendants, and specifically Lesak and King, had a duty to make such disclosures based upon the "special facts" doctrine, which provides that a duty to disclose arises when one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair. The "special facts" doctrine is applicable to the present case because the withheld and hidden material information was "peculiarly within the knowledge" of the Defendants, and Plaintiff could not have discovered such information through the exercise of ordinary intelligence. White, as principal of Austin Lloyd, Austin Coins, and NYFG, is liable for the fraud of their agents, Lesak and King.

92.    The Defendants, Austin Lloyd, Austin Coins, and NYFG, and their individual principals and telemarketing sales agents, made the above-detailed false representations (and failures to disclose) to Mr. von Nolde with the intent that he rely upon them and with full knowledge that such representations were false when made. Mr. von Nolde did, in fact, rely on these material and false representations when deciding to purchase the 150 Anna Cabral "Signature Series" certified bullion coins and pay NYFG $150,000.00 for such coins, only for Defendants to steal his money

or else convert and steal the purchased and paid for coins, all of which resulted in Mr. von Nolde's financial damages and the Defendants' obscene financial gain.

93.    By virtue of the confidential business relationships created and established between Mr. von Nolde and the self-identified Austin Lloyd/Austin Coins/NYFG "senior account advisors," precious metals experts, and "investment advisors," Lesak and King, the Defendants had a duty to disclose the above-described concealed material facts to Mr. von Nolde. The deliberate silence, when they had a duty to speak, and the resulting nondisclosure of the above-described concealed material facts, are the equivalent of false representations and/or omissions. Such false representations and/or omissions were made knowingly and intentionally by Lesak and King, in both their individual capacities and their capacities as agents, employees, and/or officers of Austin Lloyd, Austin Coins, and NYFG, and their principal, White, and with his knowledge and approval, or, at the very least, in reckless disregard of Plaintiff's rights and interests.

94.    Mr. von Nolde justifiably relied on the false representations and/or omissions of Lesak and King, both their individual capacities and their capacities as agents, employees, and/or officers of Austin Lloyd, Austin Coins, and NYFG, and their principal, White, to Mr. von Nolde's financial detriment. Defendants' wrongful actions constitute fraud at common law.

95.    Defendants, Lesak and King, in both their individual capacities and their capacities as agents, employees, and/or officers of Austin Lloyd, Austin Coins, and their principal, White, concealed their wrongful actions with the intent to mislead and defraud Mr. von Nolde. Mr. von Nolde was not aware of, nor, through the exercise of due diligence, could he have become aware of Defendants' wrongful actions until such wrongful actions were consummated. Due to the Parties' confidential business relationships, which were predicated on their mutual trust and confidence, and Defendants' superior knowledge and/or means of knowledge, Lesak and King, in both their

individual capacities and their capacities as agents, employees, and/or officers of Austin Lloyd, Austin Coins, and NYFG, and their principal, White, had a duty to disclose to Plaintiff the above-detailed materially false information. Defendants' failure to do so constitutes fraudulent concealment under New York law.

96. As a direct and/or proximate result of the false and misleading representations attributable to Austin Lloyd, Austin Coins, and NYFG, and their principal, White, made by and through telemarketing sales agents, specifically Lesak and King, Mr. von Nolde has suffered (and continues to suffer) damages arising from and related to the theft and conversion of his money and/or the 150 Anna Cabral "Signature Series" certified bullion coins he purchased, as well as mental anguish damages.

## COUNT VI
## NEGLIGENT MISREPRESENTATION
## (AGAINST AUSTIN LLOYD, AUSTIN COINS, NYFG, AND *INDIVIDUAL DEFENDANTS*, WHITE, LESAK, AND KING)

97. The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length, and pleading in the alternative, alleges that:

98. To the extent that the acts, omissions, and representations of Lesak and King to Plaintiff were determined not to rise to level of fraud, Plaintiff pleads in the alternative, that Lesak and King, in both their individual capacities and their capacities as agents, employees, and/or officers of Austin Lloyd, Austin Coins, and NYFG, and their principal, White, were—at minimum—negligent in making such misrepresentations as to the "investment" potential and value (and the availability) of the 150 Anna Cabral "Signature Series" certified bullion coins. Specifically, Lesak and King negligently supplied false information regarding market price, resale potential, availability, and "investment" options regarding the 150 Anna Cabral "Signature Series" certified bullion coins

which guided (and duped) Mr. von Nolde, and upon which he relied, in his decision to purchase such coins from Austin Coins and make payment for such coins to NYFG.

99.     Specifically, Lesak and King, while working as telemarketing representatives of Austin Lloyd, Austin Coins, and NYFG, and for their principal, White, and expressly representing themselves to be "senior account advisors," precious metals experts, and "investment advisors," offered the 150 Anna Cabral "Signature Series" certified bullion coins for sale to Mr. von Nolde when either Austin Coins had no such coins in inventory and simply stole Mr. von Nolde's purchase price or else converted and stole the coins rather than shipping them to Mr. von Nolde while also keeping the purchase price paid to NYFG for such coins. To the extent that the acts, omissions, and representations of Lesak and King, which are attributable to Austin Lloyd, Austin Coins, and/or NYFG, and to their principal, White, were determined not to rise to level of fraud, Plaintiff pleads in the alternative, that Lesak and King were at minimum negligent in making such misrepresentations (including specifically the information on the invoice that the coins had a market value of $450,000.00) in convincing Mr. von Nolde to purchase and pay for the 150 Anna Cabral "Signature Series" certified bullion coins which he never received. Specifically, Lesak and King, individually and as agents of the Corporate Defendants, negligently supplied false information that guided Mr. von Nolde in his decision to send payment to NYFG for coins which he never received.

100.    Lesak and King, individually and as agents of the Corporate Defendants, failed to exercise reasonable care and competence in obtaining, confirming the accuracy of, and communicating such information regarding the market value of the coins and  the fact that they had no intention to ever ship the purchased coins to Mr. von Nolde and/or making the above-described false and material misrepresentations and omissions.

**101.** Mr. von Nolde justifiably relied upon the negligent misrepresentations of Lesak and King, individually and as agents of the Corporate Defendants, in his dealings with Austin Lloyd, Austin Coins, and NYFG, and those misrepresentations directly and/or proximately caused him to suffer damages to the financial benefit of Austin Coins, Austin Lloyd, NYFG, White, Lesak, and King. Lesak's and King's wrongful conduct, which is attributable to Austin Lloyd, Austin Coins and/or NYFG, constitutes negligent misrepresentation under New York common law.

**COUNT VII**

**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
(AGAINST AUSTIN LLOYD, AUSTIN COINS, NYFG, AND *INDIVIDUAL
DEFENDANTS*, WHITE, LESAK, AND KING)**

**102.** The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length, and, in addition, or else pleading in the alternative, alleges:

**103.** The actions of Lesak and King, described herein, all of which are attributable to Austin Lloyd, Austin Coins, Austin Lloyd, and/or NYFG, constitute deceptive acts and practices in the conduct of business, substantially affecting trade or commerce in New York in violation of the New York Consumer Protection from Deceptive Acts and Practices, Gen. Bus. Law § 349.

**104.** More specifically, the Defendants, individually and through the Austin Coins, Austin Lloyd, and NYFG principals, telemarketer employees, and representatives, knowingly and intentionally utilized unlawful, false, misleading, deceptive, and unconscionable high-pressure sales tactics and misrepresentations to convince Mr. von Nolde to purchase 150 Anna Cabral "Signature Series" certified bullion coins from Austin Coins and pay $150,000.00 to NYFG for (or purportedly for) coins which he never received. Defendants' deceptive practices included:

  a. Holding themselves out as "investment advisors," precious metals experts, and/or "senior account advisors" while having no such expertise or qualifications;

39

b.  Running a classic precious metal coin telemarketing "long con" on Plaintiff;

c.  Convincing Plaintiff to purchase 150 Anna Cabral "Signature Series" certified bullion coins from Austin Coins as an "investment" and to pay $150,000.00 to NYFG for (or purportedly for) those coins which he never received; and

d.  Various other acts and practices that may be uncovered during discovery.

**105.**  As a direct and proximate result of the Defendants' unlawful, unfair, and deceptive acts and practices, all of which are attributable to Austin Coins and/or Austin Lloyd and White, Mr. von Nolde has suffered actual damages of at least $150,000.00.

**COUNT VIII**
**MONEY HAD AND RECEIVED**
**(AGAINST THE AIDING AND ABETTING DEFENDANTS)**

**106.**  The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length and, in addition, or else pleading in the alternative, alleges:

**107.**  By their above-described wrongful actions and/or inaction: (1) each of the Aiding and Abetting Defendants received money belonging to Plaintiff, (2) each of the Aiding and Abetting Defendants benefitted from receipt of the money, and (3) under principles of equity and good conscience, the Aiding and Abetting Defendants should not be permitted to keep the money. The Aiding and Abetting Defendants, therefore, should be compelled to refund such wrongfully received and retained funds to Plaintiff under the equitable doctrine of money had and received.

**COUNT IX**
**UNJUST ENRICHMENT**
**(AGAINST THE AIDING AND ABETTING DEFENDANTS)**

**108.**  The Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length and, in addition, or else pleading in the alternative, alleges:

**109.** The Aiding and Abetting Defendants (and possibly other persons and entities, as-yet unidentified) have been unjustly enriched by receipt of funds of and from Austin Coins and/or Austin Lloyd and/or NYFG (and White) which were obtained through fraud and/or stolen from Plaintiff.

**110.** Accordingly, Plaintiff seeks to impose a constructive trust over (and recover) all amounts by which the Aiding and Abetting Defendants have been unjustly enriched.

**ALTER-EGO**

**111.** Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**112.** Alter-ego liability is established upon a showing that a defendant has complete domination of a corporation in respect to the transaction at issue and that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury. Because a decision to pierce the corporate veil will necessarily depend on the attendant facts and equities of the case at issue, there are no definitive rules governing the circumstances when this power may be exercised.

**113.** Based upon information and belief, each of the Defendants, White, Lesak, King, and Foster, individually and collectively, used the corporate form of Austin Lloyd, Austin Coins, and/or NYFG as an alter-ego and as a mere tool or business conduit. These Defendants, or some of them, completely dominate Austin Coins, Austin Lloyd, NYFG, PWH, PWI, CMBC, Just John, CNP13, and Bullion Muscle to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented funds transfers between White and/or Austin Lloyd, Austin Coins, and/or NYFG to Perry, PWH, PWI, CMBC, Just John, CNP13, and/or Bullion Muscle, or between White and/or Austin Lloyd and Austin Coins to NYFG, and there is an unclear allocation of profit and losses between Austin

41

Coins, Austin Coins, NYFG, and White and the other Individual Defendants and Aiding and Abetting Defendants. In short, Austin Coins, Austin Lloyd, and NYFG are substantially one and the same with each other and one and the same with White and possibly the other Individual Defendants and/or Aiding and Abetting Defendants, or some of them, and the relationship between Austin Coins/Austin Lloyd/NYFG and White and the Individual Defendants and Aiding and Abetting Defendants (or some of them) is an illegitimate use of the corporate form.

114.  Pleading further, based on information and belief, Defendants Austin Lloyd, Austin Coins, NYFG, PWH, PWI, CMBC, and Just John are each owned, operated, and controlled solely and entirely by White. Upon information and belief, White uses the corporate forms of Defendants Austin Lloyd, Austin Coins, NYFG, PWH, PWI, CMBC, and Just John as alter-egos and as mere tools or business conduits. White completely dominates Defendants Austin Lloyd, Austin Coins, NYFG, PWH, PWI, CMBC, and Just John to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented funds transfers between Austin Lloyd, Austin Coins, NYFG, and/or White and PWH, PWI, CMBC, and Just John, or between Austin Lloyd, Austin Coins, and/or White and NYFG, and there is an unclear allocation of profit and losses between Austin Lloyd, Austin Coins, PWH, PWI, NYFG, CMBC, and Just John and White. In short, Austin Lloyd, Austin Coins, NYFG, PWI, CMBC, and Just John are each substantially one and the same with White, and the relationship between White and each of these Defendants is an illegitimate use of the corporate form.

115.  Pleading further, based on information and belief, Defendant CNP13, Inc. ("CNP13") is owned, operated, and controlled solely and entirely by White and/or Charisma Perry ("Perry").

Upon information and belief, White and/or Perry use the corporate form of CNP13 as an alter-ego and as a mere tool or business conduit. White and/or Perry completely dominate CNP13 to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented funds transfers between Austin Lloyd, Austin Coins, NYFG, and/or White and CNP13, and there is an unclear allocation of profit and losses between CNP13 and White and/or Perry. In short, CNP13 is substantially one and the same with White and/or Perry, and the relationship between White and/or Perry and CNP13 is an illegitimate use of the corporate form.

116. Pleading further, based on information and belief, Defendant Bullion Muscle Inc. ("Bullion Muscle") is owned, operated, and controlled solely and entirely by Eric P. Lesak ("Lesak"). Upon information and belief, Lesak uses the corporate form of Bullion Muscle as an alter-ego and as a mere tool or business conduit. Lesak completely dominates Bullion Muscle to shield assets and thus cause a diminution of available resources from which Plaintiff may obtain satisfaction of the damages directly and/or proximately caused by Defendants' wrongful conduct. Upon information and belief, there are both documented and undocumented funds transfers between Austin Lloyd, Austin Coin and/or White and Bullion Muscle, and there is an unclear allocation of profit and losses between Lesak and Bullion Muscle. In short, Bullion Muscle is substantially one and the same with Lesak, and the relationship between Lesak and Bullion Muscle is an illegitimate use of the corporate form.

**RESPONDEAT SUPERIOR**

117. Plaintiff incorporates by reference the preceding paragraphs, including specifically all factual statements and allegations therein, as though fully copied and set forth below at length.

**118.** Defendants Austin Coins, Austin Lloyd, and NYFG also are liable for the above-detailed wrongful acts committed by their principals, officers, agents, representatives, and employees during the course and scope of their agency/employment by Austin Coins, Austin Lloyd, and NYFG; to wit, the principals', officers', agents', employees', and representatives' wrongful conduct was committed (i) within their general authority, (ii) in furtherance of Austin Coins'/Austin Lloyd's/NYFG's business, and (iii) to accomplish the objective for which the principals/agents/employees/representatives were retained, all of which directly and/or proximately caused Plaintiff to suffer damages to the financial benefit of Defendants—and for which Defendants are liable under the doctrine of *respondeat superior*.

### RELIEF REQUESTED

**119. RECISSION**. Based on Defendants' above-described wrongful conduct, Plaintiff is entitled to recission of the transaction(s) at issue by which Defendants fraudulently failed to appraise Plaintiffs' coin collection but instead converted and stole same. All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

**120. ACTUAL AND CONSEQUENTIAL DAMAGES.** As direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered (and continues to suffer) damages in the form of, inter alia, the amounts Plaintiff lost in the "long con" telemarketing precious metals Anna Cabral "Signature Series" certified silver bullion coin scam and the mental anguish he has suffered in connection with such scam in an amount to be determined by the trier of fact. All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

**121. TREBLE DAMAGES.** Plaintiff also is entitled to treble damages for Defendants' knowing, willful and intentional wrongful conduct pursuant to 18 U.S.C. § 1964(c). All conditions precedent to Plaintiff's claims for relief have been performed and/or occurred.

**122. EXEMPLARY DAMAGES**.  Defendants' wrongful actions (and failure to disclose such wrongful actions) were committed intentionally, willfully, with malice and/or with conscious and/or reckless disregard for Plaintiff's rights and interests.  Accordingly, Plaintiff also is entitled to an award of punitive damages against Defendants, both as punishment and to discourage such wrongful conduct in the future.

**123. ATTORNEYS' FEES, LITIGATION EXPENSES AND COSTS**.  Plaintiff also is entitled to recover his reasonable and necessary attorneys' fees, litigation expenses and court costs actual damages to be determined by the trier of fact.

    **WHEREFORE**, Plaintiff, HANS B. VON NOLDE, requests judgment in his favor and against the Defendants, jointly and severally, awarding compensatory damages for all actual and consequential losses, treble damages under 18 U.S.C. § 1964(c), exemplary damages, and all amounts by which Defendants have been unjustly enriched; directing an equitable accounting for all benefits, consideration and profits received, directly or indirectly, by Defendants, including the imposition of  a constructive trust and the voiding of unlawful transfers; and awarding attorneys' fees and litigation expenses pursuant to 18 U.S.C. § 1964(c) and New York G.B.L. § 349(h) and the costs of suit pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d); together with pre-judgment interest pursuant to New York C.P.L.R. § 5004 or any higher applicable rate and post-judgment interest at the highest legal rate, and such other and further relief as the Court deems just, proper, and equitable.

## JURY DEMAND

    Plaintiff respectfully demands a trial by jury on all of his claims and causes of action so triable.

Dated: Thornwood, New York
      October 3, 2024

**LAW OFFICES OF KENNETH G. WALSH**

By:  /s/ Kenneth G. Walsh

      Kenneth G. Walsh (1654)
      59 Kensico Road, Suite 7
      Thornwood, New York 10594
      (929) 241-7307
      *kwalsh@kgwalshlegal.com*

      -and-

      **STEVENS LAW FIRM**

      R. Lyn Stevens (*pro hac vice* forthcoming)
      P.O. Box 1187
      Friendswood, Texas 77549
      (409) 880-9714
      *Lyn@Stevens.Law*
      Texas Bar No. 19189020

      *Attorneys for Plaintiff,*
      *Hans B. von Nolde*